# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Michael R. Campoli and Lauren J.C. Campoli, *individuals*,

   Plaintiffs and Counterclaim Defendants,

v.

Anywhere Real Estate Inc., *a New Jersey Corporation*; Anywhere Integrated Services LLC, *a New Jersey Corporation*; Burnet Realty LLC, *a New Jersey Corporation d/b/a* Coldwell Banker Realty; Sandy Glieden, *an individual*; TrustFunds LLC, *a Minnesota company*; Lynn Leegard, *an individual*; UBS Financial Services Inc., *a foreign bank*; UBS Bank USA, *a Utah corporation*; Whitney J. Ward, *an individual*; UMB Bank N.A., a *Missouri corporation*; Timothy Mundy, *"TJ" an individual*; Matthew S. Baker, *an individual*; Anthony J. Maurer, *an individual*; Thomas Rehman, *an individual*; Mark D. Grieger, *an individual*; Chelsey R. Hagen-Byrd, *an individual*; Isaiah M. Byrd, *an individual*; Wexford Real Estate LLC, *a Minnesota company*; Joel A. Burger, *an individual*; Fairways and Greens, LLC, *a Minnesota company*; Jesse J. Bull, *an individual*; Lee A. Bull, *an individual*; Ryan J. Trucke, *an individual*; Brutlag, Trucke & Doherty, P.A., *a Minnesota corporation*; Matthew Sloneker, *an individual*; Lind, Jensen, Sullivan & Peterson, P.A., *a Minnesota corporation*; Lewis J. Rotman, *an individual a/k/a* LJ Rotman; Sachin J. Darji, *an individual*; Regional Multiple Listing Service of Minnesota, Inc., *a Minnesota corporation d/b/a* NorthstarMLS; Burnet Title, *a Minnesota corporation*; and John/Jane Doe,

File No. 24-CV-04481 (JMB/SGE)

**ORDER**

1

   Defendants,

TitleNexus LLC, *a Minnesota company*; Brian Hoelscher, *an individual*; Deena Cole, *an individual*,

   Defendants and Counterclaim Plaintiffs.

Lauren Campoli, The Law Office of Lauren Campoli, PLLC, Minneapolis, MN, for Plaintiffs Michael R. Campoli and Lauren J.C. Campoli.

Christopher W. Boline and Lauren Janochoski, Felhaber, Larson, Fenlon & Vogt, PA, Minneapolis, MN, for Defendant TrustFunds LLC.

This matter is before the Court on Plaintiffs Michael Campoli's and Lauren Campoli's (together, Plaintiffs) motion for a preliminary injunction against Defendant TrustFunds LLC (TrustFunds). (Doc. No. 108.) In this action, Plaintiffs assert fifty-seven causes of action against thirty-four defendants, all of whom are individuals or entities directly or indirectly involved in the attempted sale of Plaintiffs' home in 2022. Plaintiffs now seek a preliminary injunction against TrustFunds, an electronic earnest-money transfer service used by real estate brokers. For the reasons explained below, the Court denies the motion.

## BACKGROUND

### A.   Earnest Money Transfers Involving TrustFunds

TrustFunds provides an electronic earnest-money transfer service that facilitates—through a third-party automated clearing house processor—the movement of earnest money between payors and payees in residential real estate transactions. (*See, e.g.*, Doc. No. 111-1 at 12:10–12, 58:7–25, 271.) For the last decade, TrustFunds has been integrated

2

into Defendant Regional Multiple Listing Service of Minnesota, also known as NorthstarMLS,[1] which is accessible only to licensed brokers. (Doc. No. 111-1 at 51:24–25, 52:1–2; Doc. No. 151 ¶ 3; Doc. No. 154 ¶ 7.) Because TrustFunds is integrated into every listing on NorthstarMLS, all sellers who list their property on NorthstarMLS are given the option to use TrustFunds to receive electronic earnest money transfers. (*E.g.*, Doc. No. 111-2 at 2–3.) TrustFunds charges a convenience fee for buyers, which, at all times relevant to this lawsuit, was $5.00. (Doc. No. 111-4 at 47; Doc. No. 151 ¶ 10.)

After entering into a purchase agreement, a buyer's agent may initiate an earnest money transfer through TrustFunds. (Doc. No. 111-2 at 7.) According to Plaintiffs' real estate broker, agents have no recourse through TrustFunds in the event a buyer does not transfer the earnest money through TrustFunds.[2] (Doc. No. 113-3 at 348:12–18, 349–52.) Further, once a transfer through TrustFunds is initiated, TrustFunds cannot guarantee that a seller will ultimately receive funds from a buyer—TrustFunds's owner, Defendant Lynn Leegard, concedes that a buyer or their agent can renege on a transfer before it is cleared. (Doc. No. 111-1 at 104:4–105:7.)

---

[1] According to its CEO, Timathy Dain, NorthstarMLS "provides updated real estate listing for numerous member real estate professionals in and around the Upper Midwest" through its website. (Doc. No. 154 ¶ 3.)

[2] The Court notes that TrustFunds is neither a party to the purchase agreement at issue in this lawsuit nor mentioned anywhere in it. (*See* Doc. No. 152-1 at 9–20.)

### B. 2022 Attempted Sale of Plaintiffs' Home

In spring 2022, Plaintiffs wished to sell their home in Deephaven, Minnesota. Plaintiffs engaged a real estate agent, Defendant Mark Grieger, who works with Defendant real estate brokerage Burnet Realty, also known as Coldwell Banker Realty (Coldwell), to act on their behalf in the sale. (Doc. No. 8 [hereinafter "FAC"] ¶¶ 2, 93, 121.) Grieger listed Plaintiffs' home through NorthstarMLS. (*Id.* ¶¶ 112–18.)

On May 6, 2022, Plaintiffs entered into a written purchase agreement with Defendants Jesse Bull and Lee Bull (Purchase Agreement), which contemplated a ten-day inspection period and required the Bulls to provide a $100,000 earnest money payment to the Plaintiffs "no later than two (2) Business Days after [May 6, 2022]," or by May 10, 2022. (FAC ¶¶ 4, 6; *see also* Doc. No. 152-1 at 9, 13, 16, 17, 19, 20; Doc. No. 111-4 at 2–3.) According to Plaintiffs, the Bulls did not transfer the earnest money by the specified date, or ever. (FAC ¶ 7; Doc. No. 111-4 at 75.) However, according to TrustFunds, the Bulls initiated the payment through TrustFunds on May 9, 2022. (Doc. No. 111-1 at 140:8–141:3, 364:21–365:1; 378:12–379:13; 393:7–18; Doc. No. 111-4 at 45, 47, 69–71, 73; Doc. No. 151 ¶¶ 7, 8.) Ultimately, according to the allegations in the FAC, the Bulls did not meet a contingency contemplated by the Purchase Agreement. (FAC ¶ 15.) Plaintiffs allege that, because Coldwell, via Grieger, had never retained the Bulls's earnest money payment, neither Plaintiffs nor Coldwell had any means to enforce the contingency. (*Id.* ¶ 8, 15) Thereafter, Plaintiffs sought—but the Bulls refused—to cancel the purchase agreement due to the Bulls's failure to meet the contingency. (*Id.* ¶ 16.) Plaintiffs allege

4

that the Bulls have thereafter wielded equitable title over their home while they continued to reside in it and have attempted to extort money from them to quiet title. (*Id.* ¶¶ 16, 17.)

Almost nine months later, in February 2023, Plaintiffs learned from a closing coordinator with Defendant Burnet Title that Grieger and had never uploaded the executed Purchase Agreement to their brokerage so that the brokerage's trust account could receive an earnest money transfer from the Bulls. (Doc. No. 111-4 at 75.) As a result, according to that closing coordinator, it would have been impossible for any earnest money to have landed in Coldwell's trust account. (*Id.*)

### C. Litigation

In May 2023, Plaintiffs filed suit in Hennepin County District Court against the Bulls. *Campoli v. Bull*, 27-CV-23-6625 (Minn. Dist. Ct. May 2, 2023). In their two-count Complaint, Plaintiffs alleged that the Bulls breached the Purchase Agreement and sought a declaration that the Purchase Agreement was fully cancelled under Minnesota Statutes section 559.217. *Id.*, Index #1. During discovery in that action, Plaintiffs issued a subpoena *duces tecum* to TrustFunds. (Doc. No. 111-4 at 60–66.) In response, TrustFunds turned over its records that show the Bulls's payment of TrustFunds's $5.00 convenience fee and transfer of the $100,000 earnest money payment to Plaintiffs' broker. (Doc. No. 111-4 at 68–73.) Plaintiffs assert that, because Grieger never uploaded the Purchase Agreement so that Coldwell's trust account could receive the earnest-money payment, and because of perceived irregularities in the documents, logic requires the conclusion that TrustFunds forged the documents to cover up Grieger's collusion with the Bulls and their representatives to fake an earnest money transfer.

5

The disposition of the earnest money is among the issues to be decided in the still-pending state court action. In September 2024, Hennepin County District Court Judge Joseph R. Klein ordered non-party Coldwell to deposit the $100,000 earnest money sum with the Court Administrator. *See Bull*, 27-CV-23-6625, at Index #110. Coldwell complied. *Bull*, 27-CV-23-6625, Register of Actions (noting current balance of $100,000).[3]

In December 2024, Plaintiffs filed this action. In their sprawling Amended Complaint, Plaintiffs assert fifty-seven causes of action against thirty-four defendants. Plaintiffs assert six claims against TrustFunds, including two RICO claims; claims for civil conspiracy, fraud, and negligence; and an alleged violation of the Lanham Act.

## DISCUSSION

Plaintiffs now move for a preliminary injunction against TrustFunds, asserting that "TrustFunds' continued operations presents an immediate and ongoing threat to Plaintiffs and every seller forced to rely on its . . . payment system." (Doc. No. 110 at 2.) Plaintiffs ask the Court to enjoin TrustFunds as follows: (1) from operating on NorthstarMLS; (2) from processing earnest-money transactions by itself or through any third parties; (3) from "refusing to disclose the delivery status" of the earnest-money transaction between the Bulls and Plaintiffs in May 2022; and (4) from "misrepresent[ing] or conceal[ing] the status of earnest money transactions." (Doc. No. 114 at 2–3.) Plaintiffs also ask the Court to compel TrustFunds to produce documents and records. (*Id.* at 3.)

---

[3] Plaintiffs acknowledge that this deposit occurred on September 13, 2024. (FAC ¶ 1412.)

When considering whether to grant a motion for a preliminary injunction, courts consider four factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The burden of establishing every factor belongs to the movants—here, Plaintiffs. *E.g.*, *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). Generally, no one factor is determinative, and courts "should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quotation omitted). However, for the reasons discussed below, the Court starts and ends its analysis with irreparable harm.

Irreparable harm can be harm that is either "actual or threatened." *St. Jude Med., Inc. v. Carter*, 913 N.W.2d 678, 684 (Minn. 2018). Regardless, the occurrence of such harm must be imminent. *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996) (explaining that moving party must "show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief"); *St. Jude Med.*, 913 N.W.2d at 684 (explaining that moving party's burden is to show "irreparable injury has resulted, or will in all probability result"). For that reason, harm that occurred solely in the past will not support the grant of injunctive relief. *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1015 n.3 (8th Cir. 2021) (observing that "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable

7

injury that will surely result without" the injunction). Further, harm that is merely possible or speculative or that can be redressed with money damages are also not sufficient to support injunctive relief. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 667 (8th Cir. 2022); *Graham Webb Int'l v. Helene Curtis Inc.*, 17 F. Supp. 2d 919, 924 (D. Minn. 1998).

Here, Plaintiffs provide no convincing explanation why, absent an injunction, they will likely experience imminent harm from TrustFunds' continued operations. Rather, the entirety of the alleged harm suffered by Plaintiffs occurred in the past; any injury Plaintiffs may have experienced at the hands of TrustFunds is nearly three years old. Contrary to what is required to establish this first factor, Plaintiffs have not alleged any future harm; there are no allegations of any impending future real estate transaction involving Plaintiffs, during which they will be forced to use TrustFunds's services again.[4]

The closest Plaintiffs come to articulating ongoing or future harm relates to the state court case. Specifically, Plaintiffs claim that "TrustFunds' refusal to confirm the non-delivery [of] Bulls' earnest money not only facilitates the Bulls' fraud but continues to obstruct Plaintiffs' ability to secure relief"; and that the defendants in the state court action have "relied heavily on TrustFunds' fabricated records . . . to continue to conceal Bulls' earnest money default and maintain fraudulent control over Plaintiffs equitable title for nearly three years." (Doc. No. 110 at 31.) In other words, Plaintiffs assert that

---

[4] The Court also observes that, even if Plaintiffs had shown that they would imminently be engaged in a real estate transaction, they have not shown that they would be *forced* to use TrustFunds in that transaction. Parties may elect to transfer funds via wire or even check. (*See, e.g.*, Doc. No. 111-4 at 75.) The requested relief, therefore, of shutting down TrustFunds is not tied to the specific harm alleged.

8

TrustFunds's falsification of records precludes Plaintiffs from obtaining favorable relief in the state court action. Such a theory, however, cannot justify a preliminary injunction because there has been no decision on the merits in the state court action,[5] leaving the Court to speculate as to the likelihood that Plaintiffs may prevail. This cannot justify injunctive relief. *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (concluding that a preliminary injunction cannot be issued based on speculative harm). Further, this type of alleged harm is not linked to the type of relief sought.

Given Plaintiffs' failure to establish irreparable harm, the Court need not analyze the remaining three *Dataphase* factors.[6] *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1183 (8th Cir. 2011) (providing that an adequate showing on irreparable harm is "an essential and universal predicate to the grant of equitable relief"); *Mainstream Fashions Franchising, Inc. v. All These Things, LLC*, 453 F. Supp. 3d 1167, 1200 (D. Minn. 2020) ("Failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction, because the basis of injunctive relief in the federal courts has

---

[5] Judge Klein heard the parties' arguments on their cross-motions for summary judgment on February 12, 2025. *See Bull*, 27-CV-23-6625, Index #143. As of the date of this Order, no order on those motions has issued.

[6] Nevertheless, the Court is also concerned that Plaintiffs cannot establish their probability of success on the merits. Here, Plaintiffs rely only on the allegations of fact drawn from their unverified Amended Complaint. They do not cite a single case, statute, or other legal authority in their opening brief (one case cite appears in Plaintiffs' reply brief). Absent submission of evidence and citation to applicable law, Plaintiffs cannot establish a probability of success on the merits.

always been irreparable harm and inadequacy of legal remedies." (quotation omitted)). The Court will deny Plaintiffs' motion for a preliminary injunction.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT: Plaintiffs Michael Campoli's and Lauren Campoli's motion for a preliminary injunction against Defendant TrustFunds LLC (Doc. No. 108) is DENIED.

Dated:  April 10, 2025                              /s/ *Jeffrey M. Bryan*
                                                    Judge Jeffrey M. Bryan
                                                    United States District Court